# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

DAJUAN BURNS, ) CASE NO.  4:13-CV-2642
)
    Petitioner, ) JUDGE WELLS
)
        v. ) MAGISTRATE JUDGE VECCHIARELLI
)
MIKE OPPY, )
) **REPORT AND RECOMMENDATION**
    Respondent. )

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of DaJuan Burns, ("Petitioner" or "Burns") for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the case of *State of Ohio vs. Burns*, Case No. 09-CR-527 (Mahoning County Oct. 26,

2009).  (Doc. No. 13-1 at Ex. 10.)  For the reasons set forth below, it is recommended

that the petition be dismissed with prejudice.

## I. Relevant Factual Background

The state appellate court that reviewed Petitioner's conviction and sentence

recited the following facts:

> During 2008, [Burns] was housed at the Ohio State
> Penitentiary (OSP). Corrections Officers there alleged that
> he was involved in five different incidents spanning an eight-
> month period. The allegations were that [Burns] assaulted
> and/or harassed numerous officers with a bodily substance.
>
> Of importance to this appeal is the incident that occurred on
> October 31, 2008, involving Officer Jeremy Ifft. Officer Ifft
> was passing out cleaning supplies to the inmates in C-block
> where [Burns] was housed. Officer Ifft offered [Burns] a
> broom and dust pan to clean his cell. [Burns] accepted.

> Officer Ifft passed the supplies to [Burns] through the "cuff port." The cuff port is a metal flap on the front of the cell door opened by a key through which the corrections officers pass food and other necessary items to the inmate in the cell.
>
> [Burns] passed the broom and dustpan back through the cuff port to Officer Ifft and Officer Ifft gave [Burns] some paper towels. Officer Ifft then asked [Burns] if he wanted a mop. [Burns] said that he did. As Officer Ifft handed [Burns] the mop through the cuff port, [Burns] grabbed Officer Ifft's wrist and stabbed and cut him in the forearm. Officer Ifft described the item that [Burns] used to cut him as a shiny piece of metal. It required nine stitches to close the wound on Officer Ifft's arm.
>
> A Mahoning County Grand Jury indicted [Burns] on one count of possession of a deadly weapon while under detention, a third-degree felony in violation of R.C. 2923.131(A)(B)(C)(2)(c); one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2)(D); six counts of harassment with a bodily substance, fifth-degree felonies in violation of R.C. 2921.38(A)(D); and one count of assault, a fifth-degree felony in violation of R.C. 2903.13(A)(C)(2)(a).

*State v. Burns*, No. 09-MA-193, 2012-Ohio-2698 (Ohio App. Ct. June 12, 2012).

## II. Relevant State Procedural History

### A.     Relevant Trial Proceedings

Burns was represented at his three-day trial in October 2009 by attorney Lynn Maro.  Burn's claim in his § 2254 petition arises out of several incidents that occurred during his trial, which ultimately culminated in the trial court holding Maro in contempt. The first incident occurred at the end of the State's direct examination of its witness, Institutional Investigator Michael Wylie.  (Trial Transcript ("Tr.") at 342-47, Doc. No. 14-2.)  When the State completed its questioning of Investigator Wylie, the trial court indicated that Maro could begin her cross-examination.  (Tr. at 342-43.)  Maro declined,

and requested to reserve her questioning of Investigator Wylie for the defense's case in chief, explaining that she could not conduct her cross-examination of the witness without the use of video equipment that she had requested from the State, but which had not been provided that day.  (*Id*. at 343-44.)  The trial court stated that it would not allow Maro to reserve her questioning of Investigator Wylie, and Maro insisted that the State had agreed – and failed –  to provide video equipment that was necessary for the cross-examination.  (Tr. 344.)  During a side bar conference outside the presence of the jury, the state trial court judge admonished Maro as follows:

> The court's going to tell counsel this one time and one time only.  We had this discussion at [a previous side bar that was not on the record].  Both of you have been advised of this court's rule.  You're not to argue in front of this jury and you're not to contest the court's rulings in front of this jury.  If you do that again, I'm going to hold you in contempt and you're going to jail for contempt if you try it again.
>
> Now if you don't like what I said here at side bar, you're welcome, as is your right, now to say what you want to say, but if you challenge me in front of a jury again, you're going to have a big problem here.  You've had fair warning about that.  Those are the rules of this court that apply to everyone.  The fact that you are in a situation you are in is not this court's fault, it's your fault so don't be trying to put something like that on me and embarrassing me or the prosecutor or anybody else in front of the jury.

(Tr. 344-45.)  Maro apologized and explained again that the State had told her that it would provide video equipment for her to use during her cross-examination of Investigator Wylie.  (Tr. 345-46.)  The prosecutor confirmed this, and confirmed that the State had failed to provide the equipment.  (Tr. 346.)  The trial court judge permitted Maro to reserve her questioning of Investigator Wylie for the defense's case in chief. (Tr. 346-47.)

3

During Maro's cross-examination of Ohio State Highway Patrol Trooper Vicki Casey, the trial court interrupted Maro and called her to a side bar conference three times.  (Tr. 551, 564, 571, Doc. No. 14-3.)  None of the discussions at those side bar conferences were transcribed.  At the close of the State's case, the trial court conducted an in-chambers conference with all counsel:

> Okay.  We are in chambers. . . . I chose to do this in chambers rather than in open court.  In fact, in open court, it was the intention of the court to halt the proceedings and remove the jury and address Ms. Maro in the courtroom.  I will address you now.
>
> The court called its own side bar during the course of the cross-examination of Vicki Casey.  The court indicated to counsel at the first side bar that I was bewildered at the presentation and asked for [the relevancy of what was being presented] to be explained to me . . . .  I was satisfied with Ms. Maro's explanation at the time, and she continued – she continued at great length until the court interrupted again, which is something I very, very rarely do.  However, there were no objections or scant objections from the state, and as I understand my obligation, I am not to sit idly by while irrelevant or improper evidence is being offered.  The court instructed counsel for the defendant at that time to cease what she was doing or to summarize it because the point she was making had been made long, long ago and could be done in a very summary fashion.
>
> Yesterday, the court had to address defense counsel and explain to her that when she violated one of the rules of this court, that she has to be careful about the rules of the court, she was to honor them and she was not to challenge the authority of this court.  She apologized and that's as far as it went yesterday, and I thought that I had made my point.
>
> Now as I understand it – and, of course I was a lawyer also and someone who – who zealously represented my clients and oftentimes disagreed with judges, but even though I did zealously represent my clients, I never defied the authority of the court because lawyers cannot be permitted to do that, whether they agree with the court or not.  When Ms. Maro

4

continued to do exactly what I had instructed her to stop doing and to do it in summary fashion, I allowed that to go on for a while I suppose in some manner of disbelief until I called counsel to side bar again and instructed her that she was to stop that, that she was to summarize it and that she was going to move on to whatever else she was going to do. At that time she asked for a court reporter so she could voice her objection to the court, and the court indicated that she would be welcome to do that after she finishes what she's doing in accordance with the court's instruction.  *The court feels she has acted in deliberate contempt of this court, in absolute disregard of what this court instructed her to do*, and so that it's clear whether I'm right or wrong about that does not allow a layer to disobey a directive of the court within the courtroom, and so I find you in contempt of court, and I will think about what I am going to do with you and will complete this hearing at the conclusion of this case.*

*  *  *

So I suppose because of my respect for persons of the bar, I'm doing it this way in chambers without trying to make some spectacle of this, and I'm doing it withholding or reserving my judgment until the case is over, and *a lot of what I do will probably depend upon your conduct in this trial in the future.*  Thank you.

(Tr. 601-05 (emphasis added).)  Thereafter, Ms. Maro moved for a directed verdict on all counts in the indictment, which the trial court denied.  (Tr. 608.)

The trial proceeded with the defense case.  Maro called three witnesses for direct examination: a forensic scientist who testified that there were no bodily fluids on the clothing worn by the corrections officers whom Petitioner had allegedly harassed with urine and feces (tr. 619-27); a prison nurse who had examined the officers whom Petitioner had allegedly burned with liquid, and who testified that he saw no evidence of burns on the officers' bodies; (tr. 631-38); and a lieutenant at the prison who testified that he had searched Petitioner's cell and had not discovered the weapon used to

5

assault Ifft (tr. 641-50).

After the close of evidence in the case and before closing arguments, Maro requested a mistrial on the basis of the trial court's decision to find her in contempt:

| | |
|---|---|
| Maro: | If we could, Your Honor, before going into court, I, with some trepidation but nonetheless feel compelled to do that and feel I have an obligation to request a mistrial on Mr. Burns' case.  Two basic reasons.  I probably spent as much time last night focusing on the issue of contempt and the directives of the court that the sanction will depend upon my conduct for the remainder of the trial – |
| Court: | Well, I don't know why that would bother you because your conduct is pretty well set forth in your oath of office and from time immemorial how lawyers are to act when directed by a court, so I don't know why that would bother you.  Judges tell lawyers what to do all the time and lawyers comply, so . . . |
| Maro: | I did spend a fair amount of time focusing on the contempt and preparation for the hearing which the court indicated would occur after the trial.  I do believe that what has transpired over the past two days has interfered with my preparation and presentation of the case ineffectively representing Mr. Burns.  I do think there were things subtle and otherwise in front of the jury that would have impacted – or I should say potentially impacted what they were perceiving and seeing and how they would view the case, and based upon that I would move for a mistrial. |

(Tr. 700-01.)  The trial court denied the motion for a mistrial.  (Tr. 702.)

The jury found Petitioner guilty of two counts: possession of a deadly weapon while under detention; and felonious assault.  (Doc. No. 13-1 at Ex. 9.)  The jury acquitted Petitioner of the remaining seven counts in the indictment.  (*Id.*)  On October

6

26, 2009, the trial court entered judgment imposing consecutive terms of imprisonment

totaling 13 years.  (Doc. No. 13-1 at Ex. 10.)

## B.    Direct Appeal

In his direct appeal, Petitioner, through new counsel, raised, the following

assignment of error that is relevant to this petition:

> Appellant Burns' Sixth Amendment right to counsel was
> violated when the trial court held his trial counsel in
> contempt, triggering an actual conflict of interest that denied
> Appellant Burns the effective assistance of counsel under
> the Sixth Amendment.

(Doc. No. 13-1 at Ex. 12.)  On June 12, 2012, the state appellate court affirmed

Petitioner's conviction.[1]  *Burns*, 2012-Ohio-2698 at ¶85.

Burns filed a notice of appeal and memorandum in support of jurisdiction in the

Ohio Supreme Court, in which he raised the following relevant proposition of law:

> Where counsel is facing a contempt charge during trial, thus
> creating an actual conflict of interest leading to ineffective
> assistance of counsel, the appropriate standard for the Court
> to apply is that set forth in *United States v. Cronic*, 466 U.S.
> 648 (1984), where prejudice toward the defendant is
> presumed . . . .

(Doc. No. 13-1 at Exs. 16, 17.)  On October 10, 2012, the Ohio Supreme Court declined

jurisdiction and dismissed Petitioner's appeal.  *State v. Burns*, 975 N.E.2d 1031 (Table),

2012-Ohio-4650 (Ohio 2012).

---

[1] On appeal, Burns also argued that the trial court erred in failing to merge his
two convictions for purposes of sentencing.  (Doc. No. 13-1 at Ex.12.)  The state
appellate court agreed and remanded the case for re-sentencing.  *Burns*, 2012-Ohio-
2698 at ¶¶ 58-69, 85.  Thereafter, the state trial court re-sentenced Burns, merged the
two convictions, and imposed a single eight-year term of imprisonment.  (Doc. No. 13-1
at Ex. 20.)

### III. Proceedings in this Court

On November 27, 2013, Petitioner filed his § 2254 petition in this Court.  (Doc. No.

1.)  He raises a single ground for relief:

> Petitioner Burns' Sixth Amendment right to the effective
> assistance of counsel was violated when the state trial court
> and court of appeals failed to apply the appropriate standard
> as set forth in *United States v. Cronic*, 466 U.S. 648 (1984),
> presuming prejudice as trial counsel was operating under an
> actual conflict of interest.
>
> <u>Supporting Facts</u>: Trial counsel faced a contempt charge
> during trial, thus creating an actual conflict of interest which
> prevented counsel from being able to effectively represent
> Petitioner Burns.  The proper standard for ineffective
> assistance of counsel where there is an actual conflict of
> interest is the standard set out in *United States v. Cronic*,
> 466 U.S. 648 (1984), not that set out in *Strickland v.
> Washington*, 466 U.S. 668 (1984).

(Doc. No. 1.)  Thereafter, Petitioner filed an amended petition and memorandum in

support, substituting the original respondent for the warden of the institution where he is

currently confined.  (Doc. Nos. 4, 6.)  The amended petition and memorandum in support

where otherwise identical to the originals.  (Doc. No. 4, 6.)  The State filed a Return of

Writ and Petitioner filed a Traverse.  (Doc. Nos. 13, 16.)  Accordingly, this § 2254 petition

is ready for review.

### IV. Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district

wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The

Court of Common Pleas of Mahoning County, Ohio sentenced Petitioner. (Doc. No. 13-1

at Ex. 10.)  Mahoning County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Burns's § 2254 petition.

## V.  The Merits of Petitioner's Claim[2]

### A.      Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin, 549 U.S. 70 (2006)*; *Williams v. Taylor, 529 U.S. 362, 379-90 (2000)*.  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey, 549 U.S. at 74*.

Courts must give independent meaning to the phrases "contrary to" and

---

[2] The State concedes – and the record reflects – that Burns properly exhausted his single claim for relief.  (Doc. No. 13 at 7.)  Further, because Burns filed his petition within one year after the expiration of his time for seeking a writ of *certiorari* to the United States Supreme Court, his petition is timely.

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which
> a state prisoner may obtain federal habeas relief with
> respect to a claim adjudicated on the merits in state court.
> Under the statute, a federal court may grant a writ of habeas
> corpus if the relevant state-court decision was either (1)
> "*contrary to* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "*involved an unreasonable application of* . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at an

opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of

federal law only if the deciding court correctly identifies the legal principle at issue and

unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S.

510, 520 (2003).  "In order for a federal court to find a state court's application of

[Supreme Court] precedent 'unreasonable,' the state court's decision must have been

more than incorrect or erroneous.  The state court's application must have been

objectively unreasonable." *Id*. at 520-21 (internal citations and quotation marks omitted).

This Court applies this deferential standard of review to the state courts' rulings on

Petitioner's  ground for relief.

## B.    Ineffective Assistance of Counsel

To resolve this petition, this Court must consider the two different standards that

apply to Sixth Amendment claims of ineffective assistance of counsel.  The first requires a

petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the second standard, a defendant alleging ineffective assistance of counsel is entitled to the presumption of prejudice in certain circumstances. *United States v. Cronic,* 466 U.S. 648 (1984). These circumstances include those instances where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 658-60.

As relevant in this case, "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). In this context, however, before a court presumes prejudice, a defendant must demonstrate both "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. at 350). The standard for succeeding in a case based on presumed prejudice is a high one, as the presumption is "limited to those cases where defendant was subject to a pretrial and trial process so fundamentally flawed that no lawyer of any quality could provide constitutionally adequate counsel." *Johnson v. Bradshaw*, 205 F. App'x 426, 433 (6th Cir. 2007).

In its decision affirming his conviction, after setting forth the facts related to the contempt issue, the state appellate court analyzed Petitioner's Sixth Amendment claim as follows:

> Appellant asserts that once the trial court held his counsel in contempt, she could not effectively represent him due to a

11

conflict of interest between protecting herself and defending him. He argues that even the most competent attorney cannot effectively represent her client when faced with contempt sanctions from the trial court. Appellant contends that the conditions created by the trial court made it impossible for counsel to render effective assistance of counsel.

In order to establish a violation of the Sixth Amendment's right to effective assistance of counsel, " 'a defendant * * * must demonstrate that an *actual conflict* of interest *adversely affected* his lawyer's performance.' (Emphasis added.) *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–347. A possible conflict is insufficient. *Id.* at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 347." *State v. Getsy,* 84 Ohio St.3d 180, 187, 702 N .E.2d 866 (1998). A conflict of interest occurs when counsel's regard for one duty tends to lead to the disregard of another duty. *Id.,* citing *State v. Manross,* 40 Ohio St.3d 180, 18, 532 N.E.2d 735 (1988).

In this case, the court did not hold appellant's counsel in contempt until after the state rested its case. Appellant's counsel did not move for a mistrial or assert a conflict of interest until both sides had rested and the court was going through the jury instructions and wrapping things up with counsel. Thus, appellant's counsel proceeded through most of the trial without the contempt finding or the "stress" of a possible conflict of interest. Counsel apparently believed that she could effectively represent appellant when the court held her in contempt or she would have moved for a mistrial at that point.

Furthermore, an examination of counsel's representation of appellant after the court held her in contempt reveals that she zealously presented a defense that likely resulted in appellant's acquittal on seven of the nine charges he faced. Counsel presented three witnesses. The first witness was a forensic biologist who tested certain garments for bodily substances. The witness testified that no bodily substances were found on two garments that were submitted for testing. (Tr. 623). This testimony effectively defeated two of the harassment with a bodily substance charges against appellant. The next witness was an OSP nurse who examined two corrections officers who claimed appellant had thrown a hot substance at them and burned them. He

12

> testified that no burns were noted on either officer. (Tr.
> 635–37). This testimony could have likely resulted in the
> acquittal of the assault charge. The third witness was an
> OSP lieutenant who testified that a search of appellant's cell
> did not turn up the weapon used to assault Officer Ifft. (Tr.
> 649). Thus, although the jury ultimately convicted appellant
> of this charge, it was not because his counsel failed to
> zealously present a defense to it.
>
>  In sum, counsel's performance did not adversely affect
> appellant's defense. Counsel's representation cannot be
> viewed as ineffective. In fact, the jury acquitted appellant of
> seven of the nine felony charges he faced.

*Burns*, 2012-Ohio-2698 at ¶¶ 16-20.

Here, Burns asserts two alternative reasons that the state court unreasonably

applied clearly established federal law in assessing his claim of ineffective assistance of

counsel.  (Doc. No. 1-1.)  First, Burns argues that the state appellate court improperly

determined that he was not prejudiced by his counsel's performance.  According to Burns,

this was an unreasonable application of relevant federal case law because the state

appellate court should have first determined whether his counsel was under an actual

conflict of interest, such that prejudice was presumed.  This argument fails.  A review of

the state appellate court decision reflects that the state appellate court considered

whether the trial court's threat of contempt created an actual conflict of interest, and

determined that it did not:

> In this case, the [trial] court did not hold appellant's counsel
> in contempt until after the state rested its case. Appellant's
> counsel did not move for a mistrial or assert a conflict of
> interest until both sides had rested and the court was going
> through the jury instructions and wrapping things up with
> counsel. Thus, appellant's counsel proceeded through most
> of the trial without the contempt finding or the "stress" of a
> possible conflict of interest. Counsel apparently believed that
> she could effectively represent appellant when the court held

13

> her in contempt or she would have moved for a mistrial at
> that point.

*Burns*, 2012-Ohio-3698 at ¶ 18.  In the subsequent paragraph of its decision, the state

appellate court considered the second element of the relevant analysis: whether the

alleged conflict of interest adversely affected Maro's performance.  The state court cited

to various examples of Maro's "zealous[] represent[ation] of Petitioner," including her

selection and questioning of particular witnesses and the fact that the jury acquitted

Petitioner on the majority of the charges against him.  *Id*. at ¶ 19.  Ultimately, the state

court concluded that Maro's performance "did not adversely affect [Petitioner's] defense."

*Id*. at ¶ 20.  This is precisely the inquiry required by the relevant federal case law. *See*

*Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. at 350).[3]

Second, in the alternative, Burns argues that the state appellate court properly

considered whether his trial counsel had a conflict of interest, but unreasonably applied

relevant federal case law to determine that there was no actual conflict of interest in the

case.  This argument also lacks merit.  Whether an actual conflict of interest existed and

---

[3] Petitioner also argues that, because the state appellate court failed to consider whether his trial counsel had an actual conflict of interest, the state court also "never addressed the necessary question of whether the trial court had a duty to inquire about this conflict once defense counsel raised the issue in court under *Holloway v. Arkansas*, 435 U.S. 475 (1978)." (Doc. No. 16 at 11.)  In *Holloway*, a case involving joint representation of two defendants by the same attorney, the United States Supreme Court concluded that, where a defendant notifies the trial court of an actual conflict of interest, the trial court violates a defendant's Sixth Amendment right to counsel when the trial court fails "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." 435 U.S. at 484.  Given the specific facts of *Holloway*, it is doubtful that the holding of that case applies to the facts of this case.  Even if the holding of that case applies here, however, because the state appellate court did consider the issue of whether Maro had an actual conflict of interest, and determined that she did not, there was no error under *Holloway*.

whether that conflict adversely affected counsel's performance are mixed questions of law

and fact subject to *de novo* review by a federal habeas court.  *See Tillery v. Horn*, 142 F.

App'x 66, 69 (3d Cir. 2005); *Garguilio v. Heath*, 293 F.R.D. 146, 153 (E.D.N.Y. 2013)

(citing *Strickland*, 466 U.S. at 689; *Cuyler*, 446 U.S. at 342).  A petitioner cannot rely on

hypothetical or speculative allegations to demonstrate that his counsel had an actual

conflict of interest :

> To find an actual conflict, we require petitioner to point to
> specific instances in the record to suggest an actual conflict
> or impairment of [his] interests and demonstrate that the
> attorney made a choice between possible alternative
> courses of action, such as eliciting (or failing to elicit)
> evidence helpful to one client but harmful to another.

*McElrath v. Simpson*, 595 F.3d 624, 631 (6th Cir. 2010) (internal quotation marks

omitted).

Here, Burns raises several arguments to support his claim that Maro had an actual

conflict of interest while representing him at his trial.  Many of these arguments are

frivolous.  For example, he points to unspecified "remarks" by the trial court that were

allegedly "made in front of the jury, court personnel, and opposing counsel thereby

prejudicing the outcome of the case."  (Doc. No. 16 at 5.)  Burns does not specify the trial

court's remarks to which he is referring.  Review of the transcript in the case reveals that

the trial court repeatedly called Maro to side bar conferences, but that those conferences

were conducted out of the hearing of the jury.  It is not clear how "court personnel" and

opposing counsel overhearing the trial court's comments created a conflict of interest.

Burns also points to "additional external restraints" as evidence of an actual conflict

in his case, specifically, that: the trial court was aware that Burns had filed a grievance

against Maro before the trial; and the trial court interrupted Maro multiple times during her cross examination of Trooper Casey. Although these instances reflect tension during the proceedings – either between Maro and Burns, or between Maro and the trial court – they do not themselves reflect that Maro's decision making in the case was affected by these issues. Burns points to nothing in the record reflecting that Maro opted for, or abandoned, a certain strategy on the basis of these incidents, or that she decided to cross-examine or question witnesses in the way that she did based upon these incidents. Indeed, with respect to Wylie, the record reflects that the trial court ultimately determined that Maro could call Wylie to testify during the defense's case. The record reveals that, despite these confrontations with the trial court, Maro continued to zealously question witnesses on Petitioner's behalf. In short, none of these instances reflect that Maro had an actual conflict of interest during the trial. *See, e.g., United States v. Logan,* 998 F.2d 1025, 1028-30 (D.C. Cir. 1993) (rejecting the defendant's argument that repeated confrontations between counsel and the trial court created a conflict of interest, noting that counsel continued to press the defendant's case despite those confrontations). Rather, they are precisely the type of hypothetical and speculative allegations that are insufficient to demonstrate an actual conflict in this context.

The trial court's decision to threaten Maro with, and ultimately find her in, contempt, however, is a closer question in this case. In his traverse in support of his petition, Burns argues as follows:

> Petitioner asserts that his defense counsel was impacted by this contempt charge and immediately began consulting other attorneys, including her attorney husband, about this contempt charge and what her options in response to the contempt charge were. Petitioner argues that instead of

16

> preparing for her examination of a key defense witness, she
> was distracted by the contempt charge.[4]  As a consequence,
> defense counsel's preparation and examination were
> negatively affected.

(Doc. No. 16 at 6.)  This argument echoes the comments made by Maro when she requested a mistrial on the basis of the finding of contempt, where she asserted that she was distracted by the issue, and felt that she had not effectively represented Burns as a result.  Although it is reasonable to assume that the contempt issue was on Maro's mind during the trial, Petitioner points to nothing specific in the record that demonstrates that Maro's performance was adversely affected by the issue.  Even Maro's own request for a mistrial failed to identify specific instances during trial where her conduct was affected by the issue.

The record, however, reflects that, even after being found in contempt, Maro continued to zealously represent Petitioner's interests.  Immediately after being found in contempt, she requested a directed verdict on all counts in the indictment.  During the defense's case in chief, Maro called three witnesses on behalf of the defense and thoroughly questioned them, emphasizing weaknesses in the State's case against Petitioner.  And then, after the close of evidence, she requested a mistrial on the basis of the contempt finding.  In sum, the record contains no specific evidence that the threat of contempt affected Maro's decision making during the trial such that it created a conflict of interest.  Further, even if the trial court's conduct in this case was sufficient to create an actual conflict of interest, the record reflects that the conflict did not adversely affect

---

[4] The record contains no evidence to support his assertions regarding Maro's response to the finding of contempt.

Maro's performance at trial.  There is insufficient evidence in the record to establish that

Petitioner's trial was so fundamentally flawed that prejudice should be presumed in this

case.  Accordingly, the state appellate court did not unreasonably apply relevant federal

case law when it rejected Petitioner's Sixth Amendment claim.

## VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.


Date: October 24, 2014                          /s/ *Nancy A. Vecchiarelli*
                                             United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111.**